We've lost most of our audience. We'll proceed with the next case, which to the individuals is just as important as the other one. Hill v. Accounts Receivable. Nothing draws a crowd like a fair debt collection practice. And good morning. You are Mr. Schwiebert. Right. Good morning, sir. You may proceed. May it please the court. I'm Darren Schwiebert on behalf of the appellant, Paul Hill. This is, as the court identified, an FDCPA claim, and the particular posture is an appeal of a motion on the pleadings. The district court made two rulings. The first, plaintiff has standing under Spokio because there is particularized and concrete harm caused to Mr. Hill. Second, the district court dismissed the FDCPA claim because it held that under 1692 E or F, the plaintiff has to be actually, that we have to plead, they were actually deceived the plaintiff or someone else. We know from this court's decision in DeMurray that the language, misled, deceived, or otherwise duped, does not apply to 1692 F1 claims. What that means is the F1 claims pled in the complaint have to be reversed. Because the district court relied on, in reaching its decisions. You just made a reference to an Eighth Circuit case and I don't see it in your tabled authority. It's not because it was issued after the briefing was complete. It was submitted by a 28J. I could tell you the date of the 28J. It was submitted by a 28J on September 5th of 2017. The decision was issued on August 29th of 2017. The case is DeMurray v. Gerstle, Chargo, PA et al. What did you say it held? It held two things that are going to be relevant to this appeal. The first is it held that the standard, misled, deceived, or otherwise duped, does not apply to a claim under 1692 F1. The exact language of the DeMurray court, and I have the- Wait a minute. Your 28J letter says this court has not addressed whether materiality is required. That's true. Now you say we held it that it's not required? No, no, no. In DeMurray- The reference is to 92 F1. The district court in DeMurray, much like the district court in this case, said that there was a pleading requirement based on the language that came out of Hemingson, misled, deceived, or otherwise duped. The Eighth Circuit, when DeMurray goes up on appeal, rules that language does not apply to an F1 claim. The exact wording of the DeMurray court is, The district court erred. A plaintiff need not allege somebody was likely to be misled, deceived, or otherwise duped to plead a 1692 F1 violation. What that means is the two F1 violations in this case should be reversed. As to the E claims in this case, they should also be reversed. Because the district court is wrong. There is not a pleading standard requirement of subjectively establishing that somebody was misled, deceived, or otherwise duped. The district court relied on two cases from this court. The first is- I thought materiality was the issue. I don't know where you're going here, frankly. Materiality in the district court was one of the alternative basis to reach the decision. The district court ruled we failed to plead subjective misleading. Then it says there are three alternative basis for dismissal. Materiality, the backstop function, and its attack on our interest claim. But before getting to the alternative basis the district court lays out, I want to talk about the actual basis that it laid out. And the actual basis of the district court decision was that we had to subjectively plead that somebody was misled or deceived. In Hemingson, this court goes out of its way to state that it is not a false or misleading for them to submit the affidavit. And the court examined why Ms. Hemingson's actions meant that the statement in the district court were not false and why it was not misleading. Similarly, in Jensen, this court states that Jensen had not alleged the defendant's attestation about the affidavit was literally false. 1692 applies if there is a false, deceptive, or misleading misrepresentation. What makes this case, the e-claims in this case, different from Hemingson and Jensen is we allege they are false representations. The first of those three words. On the face of the bill of sale documents. Yes. The statement in the complaint that they filed that says... Because I looked at those documents and I thought they were in the addendum. At one point those documents state that the transferee is a division of the transferor. The S&E is a division of the assenor. That's an additional false statement. Pled in the complaint. How can that... What is the false statement? There are two false, primary false statements. The first is the allegation that the defendant owes a certain amount of money for medical services rendered on an account stated. It's false. It cannot legally be true. Why not? Because they included in their account statement claim the interest up until the day they filed the claim. They clearly differentiated them. But there's no... In order to have an account stated claim, you would have had to have sent a statement of account that had that number. And because that never happens, he never receives medical services in that amount either. That sounds like a state law issue. Well, it's a... That's not a federal fraud claim. This is not a federal fraud claim. This is a false statement. The statute incorporates the standards of fraud. That's one of the elements the FDCPA is getting at. It also in 1692 is getting at false statements made by debt collectors in the attempt to collect the debt. The second false statement appears in the complaint filed when they say these account receivables were assigned to them. It's false. It's not true. Even the... Is that because of this computer business? It's because Exhibit... They gave a bill of sale in an Exhibit 1A. The Exhibit 1A, which they gave, could not be the actual Exhibit 1A. It's... It's a... It's a fake document. If they're affiliates, you're just wrong facially. The fact that the S&E's computer printed out the document memorializing what was done a day or two earlier... If that's the Exhibit 2... It's not facially false. If the agreement is entered on August 19th and the attachment to the alleged agreement is printed on August 24th, that's not the right attachment. It could not, as a matter of law, be Exhibit 1... What says it has to be a written agreement, not a handshake among affiliates? It's not a question of how do they do it. It's a question of what evidence do they have. The only evidence they presented the consumer when he went to court that day was a fake document. It's a fraudulent... It's not a fake. I mean, I've been... I've practiced long enough to have been involved in deals that were written up after the fact. You can have a forward flow agreement that permits at some point in the future you transfer assets that are subsequently identified. I agree that possibility is... But that's not what this agreement is. The agreement says, and I may have the dates wrong, on August 19th, there's a purchase of business agreement, and pursuant to that, certain assets are transferred. And then there's an Exhibit 1A, asset forth in Exhibit 1A. But what they gave the consumer is not the Exhibit 1A that was attached to that. They didn't give the consumer until they were in court, right? As part of... Presented to the court. Well... It was never presented to the consumer before the court process. That's actually incorrect. In conciliation court in Henneman County, they have to exchange the documents before the hearing begins. So the documents are given to the consumer. Okay, but it had nothing to do with the pre-dispute relationship. There is no pre-dis... This was all in the litigation mode. And as I understand it, Hill was represented by counsel at the conciliation hearing. As the order indicates, he was represented by a VLN representative at the hearing. That somehow... No, he's represented by counsel. Right. Yes. Why don't you just say that? I apologize, Your Honor. That statement... The word or is in 1692E for a reason. It's false, deceptive, or misleading. Let's talk about materiality. Well, before you get too far, before your time is completely up, and I'm more interested in hearing from the other side on this issue probably than I am from you, but why doesn't... If this was an assignment, a sale of the claim, why doesn't the Hansen case control? You cited the 28J letter from this Hansen v. Sandander case, and the other side's never argued it, so maybe there's an obvious answer that's eluding me, but I thought Hansen said if you sell the claim, the purchaser is not a debt collector. Hansen looks at two different provisions of the debt collector statute, and as to the one at issue in Hansen, beginning by saying we're not going to talk about the other, they would qualify as a debt collector under the other. That issue was not raised below, was not raised to this court. If we went back down and they tried to assert that they are not a debt collector, we would establish that they are a debt collector under the other definition of debt collector in the FDCPA, which is what the Supreme Court goes out of its way at the beginning of its opinion to say there are two ways to do this, we're only going to talk about one of them, and we're going to adopt rules for statutory construction for the FDCPA for the purpose of wiping out prior circuit court decisions that are inconsistent with it. It's important to remember that in Sandander, the Supreme Court unanimously affirms the Fourth Circuit, and in doing so, it wipes out cases from other circuits that don't follow its rules of construction. Materiality is not in the FDCPA. Those words never appear. In order to read materiality in, you have to violate what the U.S. Supreme Court said in Sandander. Materiality is an age-old element of a claim for negligent or false misrepresentation. The FDCPA is more than that, and in creating the structure that Congress created in the FDCPA, it chose not to put materiality in, and the Supreme Court had a chance to look at this in the Gilley case, and it doesn't. And the reason I think under Sandander that it doesn't is because it's not there. I just told you why it's there. The purpose of the FDCPA is to stop the bad conduct of debt collectors. It's not, like Hahn and Kahn suggest, about providing information to consumers to make an intelligent decision. That's not the purpose. This case in Duffy got it right. It's cited 1692 paren e, which causes confusion, which explicitly states its purpose. But the Supreme Court in Sandander is very clear in saying Congress meant what it wrote. What's your best case on no materiality requirement? Sandander. Pardon? Sandander. Hanson v. Sandander. The United States Supreme Court's decision. No. Hines is the U.S. Supreme Court saying that there is no litigation exception. Yeah, okay, but... What's the language from Hanson v. Sandander you're referring to? Can you give me the page site? Yes, I can. Oh, that's polar. I'm looking at it here. It's from 1725, or if you're using a different star... I'm using the Supreme Court, yeah, that's 1725. And while, of course, it is our job to apply faithfully the law that Congress has written, it is never our job to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have done when it faced a question on everyone's account it never faced. And then later down, it says, for these reasons and more, we will not presume with petitioners that any result consistent with their account of the statute's overarching goal must be the law, but will presume more modestly instead that the legislature says what it means and means what it says. There is no materiality words in 1692E or F. So you're not saying that Hanson actually said there was no materiality. You're just saying Hanson says read the statute on its face, and therefore your logical assumption is that read it on its face. Yes. There is no materiality. Yes. Thank you. We'll hear from counsel for the appellee. Mr. How is it pronounced? Lutho. Just like it's written? Yes. May it please the Court, I represent the defendant in this case, the appellee. This is a, frankly, simple case. This was a collection lawsuit regarding some unpaid medical bills on the part of Mr. Hill. That account was signed and ultimately sold to our client to collect. Our client instituted a lawsuit under Minnesota's notice pleading that spelled out what the amount was, how it broke down, and ultimately, and I believe it was Mr. Schwiebert who showed up at the hearing, in the contested hearing. It's one of the things that he does. He goes around the court hallways and comes into these cases. This case isn't in isolation. We have two more appeals following up. We have a Hilbeck case and a Jorgensen case. Same issues. Those have not been slated for argument yet, but they've been fully briefed. And then we have three more cases that are stayed in the federal courts here waiting for this court's decision. And the issue is can a consumer in this instance come in and throw a monkey wrench and do a collection lawsuit where there's a contested hearing, the judge is there, and the judge is going to make decisions based upon the complaint. There's nothing dramatic about this complaint. There's nothing dramatic about these facts. In fact, we don't even need the documents to have an assignment. Are you talking about the complaint to the conciliation court or the complaint in this case? The complaint in the conciliation court first, Your Honor, is what I'm talking about. Simple, straightforward complaint. I mean, you guys are making this as confusing as possible this morning. I apologize, Your Honor. The statement of claims in conciliation court is an abbreviated type of a complaint. It's not the standard full-blown type of complaint that we would ordinarily see in a district court action. But that complaint does spell out what the claim is and how it breaks down and the interest component of it. With respect to the issue before this court, we do have, Judge Loken, your decision for the court that you authored in the Hemmingson case. And in that case, there were allegations that there were falsities in an affidavit, but the issue was whether or not they really impacted the consumer's decision-making. Did it somehow affect his or her right as to how to proceed in that case? And the court concluded that there was not. That there needs to be this, if you will, materiality concept. That it's not just that, you know, 2 plus 2 equals 5. If it didn't matter, then it's not going to result in a claim. And Congress, you know, enacted the statute and it had balancing, as the court indicated in Hemmingson, balancing kind of purposes. One was to, you know, provide protections to the consumer, but also to provide creditors the right to be able to pursue their claims. And as your Honor wrote in the Hemmingson case, in that Supreme Court decision in Hines v. Jenkins, your Honor aptly wrote that we need to be careful in how we hamstring creditors. This isn't just a one-sided statute. We need to allow creditors to proceed in litigation with their claims. And in that case, ultimately, it was concluded that even though there was an allegation of falsity in the affidavit, it wasn't material, no one was misled. In fact, the plaintiff won in Hemmingson in the case below. Same as here. Mr. Schwiebert or his colleague was able to convince the court and the conciliation court that somehow he wins. And that is what it is, and that's how it sometimes comes out. But as Hemmingson instructs, the fact that you lost the case does not mean that you did anything wrong from an FDCPA perspective. And then Hemmingson was followed up by the Janssen case, I think three years later. Janssen, again, involved an alleged falsity in an affidavit, a claim that was stated that it was on personal knowledge when, in fact, the person didn't have personal knowledge. And the court ultimately concluded that may be false, but it really isn't impacting that person's ability to make a decision. You're not proving that there's any material falsity. And ultimately, the court concluded that from an objective standpoint, no one was misled. The consumer wasn't misled. The court wasn't misled. And as a result, the court concluded that while it technically may be false, it's not going to rise to the level of a violation. And so I believe that this court has already made a decision with respect to materiality. It comes clear to me from those two cases. And this is an issue that has been looked at in other jurisdictions, other circuit courts. And the courts are coming down in the context of what we're talking about, that there needs to be something more than just a technical falsity. This isn't some sort of a, let's see if we can flyspeck and find something wrong, and therefore we then have a claim. And that's what, again, Your Honor addressed, that this court needs to be careful with respect to the Heintz instruction from the Supreme Court. What if you have a situation where a creditor brings a claim and either at the outset or at some point along the way finds out that it's factually inaccurate, that maybe the debtor actually paid the bill off, but continues to pursue it anyway. And the debtor's not deceived. They know they paid it. They go to the conciliation court. They prove they paid it, and they win. Do they have no claim in that case? No, I think they would have a claim in that case. They have enough claim, right? They do. That's not the facts here. But I do believe that that's a claim, and that's the McDonough case that was in the 9th Circuit, 10th Circuit, where the court looked at that, where they realized that this person really didn't owe the money. And I think it might have been a passing of a statute of limitations, and yet they still pursued it. So it was a conscious decision to pursue an invalid claim. And the court, they got hit, and it was affirmed on appeal. So how do we know from the conciliation court decision here, that that's part of the problem you have, is conciliation court just says plaintiff wins, defender wins. We have no explanation. How do we know that this was a claim that was maybe never owed in the first place, or it was paid, or what the basis of the conciliation court decision is? Yeah, and I wish there were a more robust decision. And I believe that that's what Judge Loken, author of the Hemingson case, looked at that exact thing, because Hemingson was also a loss. There was a claim that they pursued this claim in a collection lawsuit, and they lost. And basically what came out of that was the claim that there was a violation of the FDCPA, exactly along what you're arguing, Your Honor. And the court ultimately concluded that just because you lose a lawsuit doesn't mean that you violated the FDCPA. And in this instance, they've not gone to the standpoint of making the allegation in this complaint that this was false, we didn't owe this money. That's not been alleged whatsoever in this lawsuit. So the only allegation of falsity is that you didn't follow the Minnesota statute that would allow you to claim the interest. Right. And that you weren't actually an assinee. That's right. And the issue with respect to the latter is, there's an OJICA case, OJICA v. ARS, my client. That was in the Minnesota Court of Appeals after the briefing was done in this case. That's been decided, and the court in that instance looked at that exact issue with respect to interest and said, you get 334.01 interest. With respect to standing, the standing issue, the court said, and I apologize, OJICA might not have had a 334, but it really did have the standing issue. And it said under Minnesota law, plaintiff doesn't have a right to come in and challenge that unless there's some conflicting claims from creditors, that two creditors are both saying you owe the money. There's no allegation of that. And absent that allegation, under Minnesota law and the Supreme Court decisions, are cited in OJICA, which Mr. Schwiebert was opposing counsel on that, and he lost that appeal on that exact issue. So OJICA is very instructive with respect to this interest issue. More importantly, again, it's spelled out in the complaint, they were seeking interest under 334.01. They weren't seeking prejudgment interest under 549. whatever it is. So the point is both the complaint spells out, and those are the facts, they can't get around that. I'm more worried, I thought you were going to get into the assignment point, and then you dwell at great length on this interest point, which seems to me not nearly as significant or serious. That's right, Your Honor, I apologize. On the assignment point, the case law that we've cited to Your Honor, and just in general, assignments... Counsel just asserted this morning that the reference to division in that document that I thought I was going to be able to have here was, oh, another false and fraudulent statement. Was there any basis for that? Well, there is no basis for that. There's a reference to the S&R and the S&E being a division of the S&R.  This is, if you will, the collection side of the entity. So now where do we get this false documents notion? I don't understand the... Is there anything in the FDCPA that would preclude someone from writing up the claim document brought to court later after the assignment transaction transfer? Well, I think that you could find a claim if, in fact, I just made up a false document and said, you know... This is a facial argument. Right, well, that's true, Your Honor. Planoff says this thing was false on its face, and I said, what about the reference to division, which means that the contemporaneous reduction to writing is of less significance to the parties. And he says, oh, that was false, too. So you're saying there's no basis for that? Well, there is no basis for that. He's taken a deposition of our clients in a different case, and he knows that. But be that as it may, we have that allegation in this case, that that's part of the falsity, if you will. That goes to the issue of materiality. Let's assume they weren't a division. Oh, I understand. Right, and so we've got that point of it. But what's going to happen here is that I think there are about 12,000 FDCPA lawsuits filed every year in the federal courts, and that doesn't count the claims. What's going to happen if the holding of this case is that a consumer can always come in and say, hey, I challenge your assignment. I think your assignment was false. I really don't think you have an assignment. Every single collection lawsuit is going to have this claim. In this case, it was a contested case. There was a judge there, a judge who made a decision. It's a conciliation court referee. But we're in litigation with lawyers who are obligated to be ethical with individuals who are going to be at least reviewed by a court of law when they're making these claims. The second point, as I understand it, he made about the assignment was that you're not a division. You have to answer that. But the second one was that the date of the assignment was August 19th, whatever, and the attachment A that's referenced in the assignment is dated two weeks later. Right. And I apologize, Your Honor. ARS is a, if you will, sister corporation of the creditor. I apologize. I thought I heard you say that that's, in fact, that is true. I mean, you've addressed that issue. I want to ask about the other one. And with respect to the second issue, and that's, again, what, I wish we wouldn't have even created the documents, that our client would have just said it was an assignment and we wouldn't even be here. But now we have the documents that document the assignment and document the dollar amounts with the payments and that sort of thing. And what happens with respect to just logistically the way that happens is as they, they have to get authority. There's a whole other issue with respect to the Minnesota Attorney General and all that sort of thing that they're required to get a sign-off, the creditor, through an AG agreement to bring a lawsuit, to have a lawsuit actually brought. And they do that. That's why there's the suit authorization. That's part of the AG agreement. But then there's the assignment and the sale. And what happens is they basically take that asset and put it onto the books of ARS, and ARS actually pays money for that. And then they create the, well, as a part of this process, this isn't in a vacuum, this one claim, this is multiple claims. As a part of that process, the entity that purchases the agreement is creating the final document to document what happened. And that's why we have the different dates. But the issue is, again, going to where is the materiality that this is dated two days later? How is this impacting this consumer's decision-making? Do I go to court? Whether they had anything in writing whatsoever, the consumer needs to go to court. They need to be there. There's a lawsuit. They don't even need to have these documents. And so that's what we get to with respect to Hemmingson & Jansen is, is it truly impacting this consumer? Is it somehow putting some unfair improper burden on the consumer? And there's no allegation of that. The consumer needed to be there. Would it be immaterial if you didn't have, if you weren't a valid assinee? If you're not a, if, let's assume Minnesota requires you go through steps A, B, and C to become an assinee and you don't do it properly, is that an immaterial issue? If you're not a valid assinee? If there is, at the end of the day, proof that you're not a valid assinee, I think that there's a problem. The issue in this case is, is we look at it from the standpoint of the pleading. And as I understand the court, and now we're going to make that decision at the hearing. And there was no finding that they weren't a valid assinee. There's never been a finding. There's no allegation that there was a finding that they weren't a valid assinee. The issue is, as I think it was said, they didn't prove the claim. It was a kind of a non-order order. But, you know, it can happen. I agree it can happen. But not in the context of where we are, where we need to make a decision on how does this consumer respond to the particular circumstances they're faced with. And if there were a misrepresentation, which we say there wasn't, it's not material. And, again, to clarify on my end, at least your position with respect to this 28J letter citation.  I apologize, Your Honor. Hold that out. Have we ruled that materiality is an issue? No, you have not, Your Honor. It's absolutely not. Thank you. And you agree that Hansen doesn't apply? You haven't argued it. I have not argued it, Your Honor. And I'll explain why. I agree with counsel. There are two ways that you can become a debt collector as a debt purchaser. That case had a rifle shot on the one issue, and the court looked at that issue. And that's why they didn't go beyond and look at materiality. They didn't look at unsophisticated standard or consumer, which isn't in the deal. But, no, there is another basis, and that's just not an issue that we wanted to take on. If Your Honor wanted to take that on and find that you can affirm on that separate basis, I'd be happy to accept that. Thank you. Very well. We'll hear the rebuttal argument, Mr. Sweetsburg's rebuttal argument. Interest. Minnesota Supreme Court has ruled 549.09 is the exclusive provision for interest. They can't get interest under 549.09 because they're below the minimum created by the Minnesota legislature. Minnesota Supreme Court, after the briefing was complete, ruled that's the applicable statute, which means their complaint in the conciliation court was seeking interest. They're not allowed by law. That's an F-1 violation. Duffy, that should be sent back. All of the jurisprudence on that issue prior to the Minnesota Supreme Court ruling, not significant. Materiality is not in the statute. You shouldn't import it. The Supreme Court told you how to construe the statute. Thank you. Very well. The case is submitted, and we will take it under consideration.